IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Selina K. T.,[1] | ) | Case No.: 0:23-cv-6147-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Leland Dudek, | ) | **OPINION AND ORDER** |
| Acting Commissioner of Social Security | ) | |
| Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for review of the January 21, 2025, Report and Recommendation of United States Magistrate Paige J. Gossett (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 31.] In the Report, the magistrate judge recommends the Commissioner's final decision denying Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income be affirmed. *Id.* Plaintiff filed timely objections to the Report. [ECF No. 34.] For the reasons outlined herein, the court respectfully declines to adopt the Report and reverses and remands the Commissioner's final decision for further administrative proceedings.

**STANDARD OF REVIEW**

The scope of federal court review under 42 U.S.C. § 405(g) is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Leland Dudek was appointed as Acting Commissioner on February 18, 2025. Under Fed. R. Civ. P. 25(d), he is substituted as a party to this action.

*See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*, 305 U.S. at 229).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court. The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1). Without specific objections to portions of the Report, this court need not explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). It must "only satisfy itself that there is no clear error on the face of the record in order to

accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

The Report sets forth the administrative proceedings and applicable law, which the court incorporates herein without a full recitation. [ECF No. 31.] Briefly, after a hearing, the administrative law judge ("ALJ") found Plaintiff had severe impairments, including lumbar degenerative disc disease, osteoarthritis, lumbar radiculopathy, late effects of a fractured pelvis, left knee degenerative joint disease, chronic pain syndrome, and depression. *See id.* at 2. The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours; stand/walk for 6 hours; and she can operate foot controls frequently and hand controls frequently; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; occasionally balance as described in the Selected Characteristics of Occupation ("SCO"); occasionally stoop, kneel, crouch, and crawl; never work at unprotected heights, frequently work near moving mechanical parts, and frequently operate a motor vehicle as a work requirement; occasionally work in vibration; frequently work in dusts, odors, fumes, pulmonary irritants, and areas of poor ventilation; frequently work in humidity and wetness; and tolerate frequent interactions with supervisors, colleagues, and the public. *Id.* The ALJ concluded that, while the evidence did not clearly establish whether Plaintiff could perform her past relevant work, she remained capable of performing jobs in the national economy. *Id.* Thus, the ALJ found Plaintiff was not disabled as of her alleged onset date.

The Report recommends affirming the decision of the Commissioner. [ECF No. 31.] Plaintiff objected to the Report. [ECF No. 34.] She argues that both the magistrate judge and the

ALJ failed to address the consistency of her repeated claims that she needed to lie down and elevate her legs to manage pain in her bilateral legs and knees, pelvis, and lower back. *Id.* at 2. She further cites her consistent reports "that her pain was exacerbated by prolonged standing, walking and sitting with her feet on the floor (without propping them up) and impacts her sleep." *Id.* (citing Tr. at 47–54, 1275–86). Plaintiff contends the ALJ and the magistrate judge ignored evidence that supported her allegations within consultive exam reports from Dr. Patel, Dr. Garrett, and Dr. Hillman. *Id.* at 3. She further argues that the ALJ improperly relied on these consultative opinions to identify inconsistencies in her claims, despite issues such as Dr. Patel's report predating the relevant period, Dr. Garrett's inadequate review of her medical records, and Dr. Hillman's failure to specify the evidence underlying his conclusion. *Id.* at 3–4. She maintains both Dr. Garrett and Dr. Hillman noted abnormalities on exam that were not considered. *Id.* She asserts the magistrate judge erred in noting Dr. DePace's statement that "[c]ognitively, the claimant clearly has the ability to perform all higher-order activities of daily living" because she did not allege cognitive impairments. *Id.* at 5. Plaintiff claims the ALJ's lack of explanation requires remand. *Id.* at 6.

A claimant's RFC "is an administrative assessment of the extent to which [her] medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect [her] . . . capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (1996). It represents the most the claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). It "must be based on all the relevant evidence in the case record, such as: [m]edical history, [m]edical signs and laboratory findings, [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), [r]eports of daily activities, [l]ay evidence, [r]ecorded observations,

[m]edical source statements, [e]ffects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, [e]vidence from attempts to work, [n]eed for a structured living environment, and [w]ork evaluations, if available." SSR 96-8p, 1996 WL 374184, at *5.

"[A]n ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." *Lewis v. Berryhill*, 858 F.3d 858, 865–66 (4th Cir. 2017) (citing 20 C.F.R. § 404.1529(b), (c)). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Id.* at 866 (citing 20 C.F.R. § 404.1529(b)). If the ALJ concludes the claimant's impairments could reasonably produce the symptoms she alleges, he continues to the second step in which he must "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id.* (citing 20 C.F.R. § 404.1529(c)).

At the second step, the ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In undertaking this inquiry, the ALJ should consider "statements from the individual, medical sources, and any other sources that might have information about the claimant's symptoms, including agency personnel," as well as: (1) the claimant's activities of daily living; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) other factors

concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7–8 (2017); 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

Plaintiff testified during the first hearing that she spends most of the day lying down and cannot sit or stand for prolonged periods. Tr. at 47. She stated she could sit for only 10 to 15 minutes and stand for 20 minutes at a time. Tr. at 48. During the second hearing, she testified that she needed to elevate her legs and has difficulty focusing due to medication side effects. Tr. at 1286.

In the report, the magistrate judge wrote:

The ALJ specifically noted the record lacks signs or findings supporting Plaintiff's allegations of "an inability to sustain reasonably prolonged sitting or overly sedative impact of medications, despite participation in several face to face consultative examinations and office visits." (Tr. 1242). In other words, he noted that despite Plaintiff's allegations of needing to change positions frequently and being sedated by her medications, her providers did not observe her appearing sedated, shifting, or needing to change positions frequently during their exams.

[ECF No. 31 at 7]. Although Plaintiff maintains "limitation of function and disabling impact of [her] pain were well-cited in [her] brief," ECF No. 34 at 2, her brief does not reference any observations from her providers that she had difficulty sitting or maintaining other positions or appeared sedated. *See* ECF No. 16 at 21–24. Thus, the magistrate judge and the ALJ correctly noted a lack of supporting provider observations.

The court rejects Plaintiff's claim that the ALJ erred in relying on Dr. Garrett's report. A review of Dr. Garrett's report shows he adequately considered Plaintiff's history of injury and treatment and based his findings on his unremarkable observations during the March 2015 exam. *See* Tr. at 751-55.

Additionally, Plaintiff's argument regarding the ALJ's reliance on Dr. DePace's statement that she "had the ability to perform all higher-order activities of daily living" lacks

merit. While Plaintiff did not allege cognitive impairments, the magistrate judge correctly found this statement relevant to her claim of difficulty staying on task. *See id.* at 9.

But the court agrees that the ALJ erred in relying on Dr. Patel's impressions from the August 23, 2011, consultative examination, as they were not relevant to the period at issue. The ALJ improperly used these findings to highlight inconsistencies in Plaintiff's allegations.

Plaintiff also argues that the ALJ and the magistrate judge should have credited some of Dr. Hillman's findings over others. *See* ECF No. 34 at 4. The magistrate judge acknowledged inconsistencies between Dr. Hillman's exam report and a separate form he completed, concluding that the ALJ properly evaluated the opinion's persuasiveness. [ECF No. 31 at 10–11.] But she reasonably concluded, "Although the ALJ did not explicitly note inconsistencies between the opinions in the examination report and on the separate form, his persuasiveness evaluation shows that he properly evaluated various aspects of the opinion based on supportability and consistency, credited those limitations supported by Dr. Hillman's examination report and consistent with the other evidence of record, and reasonably considered the opinions partially persuasive." *Id.* at 11. The magistrate judge noted the ALJ had addressed the evidence and explained his reasons for rejecting sitting, standing, walking, and manipulations opined to by Dr. Hillman based on his exam findings, his other opinion, and the other evidence of record. *Id.* at 11–14. She further acknowledged that, even if the aspects of Dr. Hillman's opinion more favorable to Plaintiff were credited, it remained Dr. Hillman's opinion that Plaintiff "could sit for a total of three hours and engage in a combination of sitting, standing, and walking for eight hours over the course of a workday." *Id.* at 12.

But Plaintiff points to specific findings in Dr. Hillman's report—such as diminished sensation in her hands and feet and reduced peripheral pulses—that the ALJ ignored. [ECF No. 34 at 4.] A review of the ALJ's decision includes no reference to these findings. Furthermore, the

ALJ neglected similar findings from Plaintiff's treating medical providers. *See, e.g.,* Tr. at 89 (decreased sensation in left thigh), 99 (decreased sensation in right ankle), 454 (neurologic weakness noted), 487 (decreased sensation to light touch in left foot), 511, (diminished pulse and decreased sensation to light touch in left foot), 583 (diminished left femoral, right femoral, and left popliteal pulses, weakness and decreased reflexes on neurologic exam), 597 (weakness and decreased reflexes on neurologic exam), 773 (weakness noted on neurologic exam), 981 (weakness and decreased reflexes noted on neurologic exam), 1034 (diminished left and right femoral and left popliteal pulses, neurologic weakness, and decreased reflexes), 1076 (diminished pulse and decreased sensation to light touch in left foot). Thus, these abnormal findings were not anomalies but documented throughout the record by other providers.

Although the court finds the ALJ did not err in concluding the treating and consultative providers failed to record specific observations that would support some of the functional limitations Plaintiff alleges, the court cannot ignore that the ALJ minimized provider observations supporting the severity of Plaintiff's pain. While the ALJ acknowledged: "The claimant has been observed in moderate pain/distress on occasion (D20F/7, 22, 38, 91), but not uniformly (D20F/50, D22F/3)[,]" Tr. at 1241, the record reflects multiple instances where providers noted Plaintiff's pain-related distress. The ALJ's treatment of this issue does not adequately reconcile Plaintiff's providers' observations with his conclusion. In fact, Plaintiff's providers noted her distressed appearance throughout the record. Her primary care doctor George Moore, M.D., noted she was in "moderate pain/distress," "agitated from pain," and had "some difficulty getting on & off table" during physical exams. *See, e.g.*, Tr. at 454, 471, 704, 705, 736, 772. Her pain management physician James Taylor, M.D., and other providers within his practice described her as being in mild distress. *See, e.g.*, Tr. at 82, 88, 1126, 1474. Her chiropractor Johnathan Davis, D.C., indicated she was in "moderate pain/distress" during

multiple visits. *See, e.g.*, Tr. at 589, 620, 1053, 1463, 1469. During one visit, he wrote "[p]atient was in a lot of pain but was able to do a sit up on her own to get up off the table." Tr. at 590. Nurse practitioner Earline Little also documented moderate pain/distress during multiple visits. *See, e.g.*, Tr. at 583, 596, 965, 981, 1034, 1060. The ALJ also failed to thoroughly consider Plaintiff's treating providers' findings of other abnormalities on exams, including depressed and anxious mood and affect, joint tenderness, joint swelling and edema, and decreased range of motion. *See, e.g.*, Tr. at 487, 511, 583, 596, 773, 981, 1034, 1076, 1126, 1127, 1463, 1469, 1480, 1569.

The record further supports Plaintiff's argument that she consistently reported high levels of pain and difficulties with sleeping and sitting, standing, and walking for prolonged periods to her providers throughout the relevant period. *See, e.g.*, Tr. at 82, 96, 468, 539, 576, 588, 618, 710, 770, 979, 1023, 1052, 1461, 1491. She specifically reported to Dr. Garrett that she avoided pain medication due to excessive drowsiness. Tr. at 751.

While the Report appropriately recognizes the ALJ's rationale for rejecting some of Plaintiff's subjective allegations and for assessing the specified RFC, Plaintiff has pointed to probative evidence that the ALJ overlooked. Without "a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; . . . a resolution of any inconsistencies in the evidence as a whole; and . . . a logical explanation of the effects of symptoms, including pain, on the individual's ability to work," the ALJ's RFC assessment is not supported by substantial evidence. *See* SSR 96-8p, 1996 WL 374184, at *7. Thus, the court sustains Plaintiff's objections.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record, the court

declines to adopt the Report. Therefore, the Commissioner's decision is reversed and the matter is remanded for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

March 13, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge